UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 27 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON )
1400 Eye Street, N.W., Suite 450 )
Washington, D.C. 20005 )
)
      Plaintiff, )
)
v. )
)
U.S. SECURITIES AND EXCHANGE )
COMMISSION )
100 F Street, N.E. )
Washington, D.C. 20549, )
) Case: 1:11-cv-01732
) Assigned To : Boasberg, James E.
and ) Assign. Date : 9/27/2011
) Description: FOIA/Privacy Act
MARY L. SCHAPIRO )
CHAIRMAN, U.S. SECURITIES AND )
EXCHANGE )
COMMISSION )
100 F Street, N.E. )
Washington, D.C. 20549, )
)
      Defendants. )
_____ )

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

1. This is a lawsuit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101 *et seq.*, 3010 *et seq.*, and 3301 *et seq.*, which includes the Disposal of Records Act, 44 U.S.C. §§ 3301-3314, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, challenging as arbitrary, capricious, and contrary to law the Securities and Exchange Commission's ("SEC" or "Commission") record keeping guidelines and directives requiring SEC employees to unlawfully destroy early-stage investigative files. Pursuant to SEC policy, records related to thousands of preliminary inquiries were knowingly

and routinely destroyed, and the unauthorized and illegal destruction of enforcement-related records has continued to the present. This action also challenges the failure of SEC Chairman Mary L. Schapiro to take enforcement action to ensure adequate preservation of all SEC federal records, and the failure of the SEC and Chairman Schapiro to take any actions to restore any of the unlawfully destroyed records.

## JURISDICTION AND VENUE

2. This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (mandamus), 5 U.S.C. §§ 701, 702 and 706 (Administrative Procedure Act), and 28 U..C. §§ 2201 and 2202 (Declaratory Judgment Act).

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

## PARTIES

4. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit, non-partisan organization, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. CREW seeks to empower citizens to have an influential voice in government decisions and in the governmental decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation, and advocacy.

5. To conduct research, CREW frequently uses government records made available to it under the Freedom of Information Act ("FOIA"). Since its inception, CREW has filed hundreds

of FOIA requests with a wide variety of government agencies, including the SEC. Currently CREW has two FOIA requests pending with the SEC that seek: (1) documents sufficient to enable CREW to ascertain whether the SEC's Enforcement Division has made promised reforms that have resulted in the Division's increased effectiveness, and (2) documents sufficient to test the accuracy of public statements by SEC Enforcement Chief Robert Khuzami that destruction of closed cases has not harmed the SEC's investigative efforts. Through its research and dissemination activities, CREW intends to use and make available to the public records that are created and maintained by the SEC. CREW has a direct interest in ensuring these records are maintained, preserved, and made accessible to the public in accordance with federal law.

6. Defendant SEC is an agency within the meaning of 44 U.S.C. § 2901(14) and 5 U.S.C. § 701(b)(1). The SEC is required under the FRA to maintain and preserve its records and to take action to recover records that have been lost or destroyed. The SEC also is required under the FOIA to produce upon request all non-exempt documents in its possession or under its control.

7. Defendant Mary L. Schapiro is the chairman of the SEC, is responsible for directing and overseeing the activities and business of the SEC, and is sued solely in her official capacity. The FRA obligates her, as head of the SEC, to maintain an active records management program that provides for effective controls over the creation and use of federal records and to establish safeguards against the improper removal or loss of federal records. Her responsibilities under the FRA also include, upon discovery of any actual or impending destruction of SEC records, the obligation to initiate action through the attorney general to recover the records.

## STATUTORY FRAMEWORK

### The Federal Records Act

8. The FRA is a collection of statutes that governs the creation, management, and disposal of federal or "agency" records. 44 U.S.C. §§ 2101-18, 2901-09, 3101-07 and 3301-24. The FRA requires federal agencies to establish: (1) a program to make and preserve agency records; (2) effective controls over the creation, maintenance, and use of records; and (3) safeguards against the removal or loss of records. 44 U.S.C. §§ 3101, 3102 and 3105.

9. Specifically, the FRA mandates: "[t]he head of each Federal agency *shall make and preserve* records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency . . ." 44 U.S.C. § 3101 (emphasis added). The FRA defines federal agencies as "any executive agency or establishment in the legislative or judicial branch of the Government . . ." 44 U.S.C. § 2901(14).

10. Federal or "agency" records are defined as "all books, papers . . . or other documentary materials, regardless of physical form or characteristics . . . made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Government or because of the informational value of data in them." 44 U.S.C. § 3301.

11. The disposal of any federal record is governed by specific provisions of the FRA. 44 U.S.C. §§ 3301 et seq. (Ch. 33. Disposal of Records). These provisions provide the exclusive procedure by which all federal records may be disposed of or destroyed. 44 U.S.C. § 3314.

12. Under these provisions, federal records may not be disposed of or destroyed without the authorization of the Archivist of the United States ("Archivist") either through General Records Schedules or NARA-approved agency-specific disposition schedules. Specifically, prior

4

to destroying any federal record, the head of each agency must submit to the Archivist a list of any federal records that do not appear to have sufficient value to warrant their continued preservation. 44 U.S.C. § 3303. After examination of the list, the Archivist may authorize the agency head to destroy those federal records listed only after the Archivist has: (1) made a determination that the federal records listed do not have sufficient administrative, legal, research, or other value to warrant their continued preservation, and (2) published notice in the Federal Register providing an opportunity for interested persons to submit comment on the proposed destruction of the federal records. 44 U.S.C. § 3303a(a).

13. The FRA also provides several mechanisms for the restoration of lost or destroyed agency records. First, the FRA places an independent duty on the Archivist to initiate action to recover agency records. Specifically, if the Archivist becomes aware of any "actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of [an] agency," he must notify the agency head and assist the agency head in initiating action through the attorney general for the recovery of the wrongfully removed records and for other legal redress. 44 U.S.C. § 2905(a). If the agency head refuses to pursue legal remedies, the Archivist must request that the attorney general take action and must inform Congress he has made this request. 44 U.S.C. § 2905(a).

14. Second, the FRA places a similar and independent duty on the head of each federal agency to "initiate action through the Attorney General for the recovery of records he knows or has reason to believe have been transferred to his legal custody." 44 U.S.C. § 3106. If the agency head refuses to pursue legal remedies, the Archivist, again, must request that the attorney general take action and must inform Congress he has made this request. 44 U.S.C. § 3106.

15. Heads of federal agencies also are under an affirmative duty to implement the standards and guidelines for the retention of federal records. Specifically, each agency head must maintain an active records management program that provides for effective controls over the creation and use of federal records and that ensures the application of the Archivist's standards and procedures for the preservation of federal records. 44 U.S.C. § 3102. Furthermore, agency heads are required to establish safeguards against the removal or loss of records determined by the agency to be necessary and required by regulations of the Archivist. 44 U.S.C. § 3105.

**FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF**

16. SEC regulations authorize the Commission to conduct preliminary investigations, where "no process is issued or testimony compelled," and formal investigations, which are accompanied by the power to issue subpoenas. 17 C.F.R. § 202.5(a).

17. In describing those investigations that precede formal investigations, the SEC uses three terms interchangeably: "matters under inquiry (MUIs)," "informal investigations," and "preliminary investigations." Notwithstanding the nomenclature, the terms delineate two investigative stages: investigations done before a formal investigation and the formal investigation itself.

18. For example, the SEC's Enforcement Manual refers to three types of inquiries: (1) MUIs; (2) investigations; and (3) formal investigations. SEC Division of Enforcement, Enforcement Manual, § 2.3.2 (Aug. 2, 2011). According to the manual, MUIs may be converted to investigations and investigations may be opened independent of a MUI, but formal investigations may be initiated only by a formal order issued by certain senior officials within the SEC's Enforcement Division. *Id.* at § 2.3.3.

19. Senior SEC enforcement officials speaking publicly have referred to investigations conducted prior to formal investigations as "informal" or "preliminary" investigations, omitting any specific reference to MUIs. For example, at an SEC-sponsored international securities conference in 2005, then-Deputy Enforcement Director Linda Thomsen used the terms "informal" and "preliminary" interchangeably, explaining both describe the same investigative process. Four years later in testimony before Congress, then-Enforcement Director Thomsen used similar language to describe the SEC's "preliminary investigations," which she noted "either lead to the opening of a full investigation or the closure of the preliminary investigation."

20. The purpose of the MUI, as a precedent to a formal investigation, is "to gather additional facts to help evaluate whether an investigation would be an appropriate use of resources." SEC Division of Enforcement, Enforcement Manual, § 2.3.1 (Aug. 2, 2011). Toward that end, it has been and continues to be the policy and practice of many on the SEC enforcement staff to gather substantive evidence as part of the MUI process in order to meet the SEC's threshold for opening a formal investigation. This assembled evidence goes beyond newspaper clippings and other information in the public domain, and is part of the file referred to as a MUI.

21. For record keeping purposes, the National Archives and Records Administration ("NARA") has approved a records disposition schedule (N1-266-91-2) covering SEC "Investigative Case Files." By its express terms, that schedule applies to "Investigative Case Files (also know [sic] as 'complaint cases' and 'general assignment files'), including case files relating to preliminary investigations." Under the terms of N1-266-91-2, such investigative records must be retained for at least 25 years.

22. Notwithstanding this requirement, the SEC has had a written directive in place at least since 1998 affirmatively mandating that SEC enforcement staff destroy any records created or obtained in connection with closed MUIs.

23. Reportedly, implementation of this directive has resulted in the SEC-approved destruction of at least 9,000 case files relating to SEC MUIs. Among the destroyed case files were records concerning the fraudulent activities of Bernie Madoff, Goldman Sachs trading in AIG credit default swaps in 2009, financial fraud at Wells Fargo and Bank of America in 2007 and 2008, and insider trading investigations of Deutsche Bank, Lehman Brothers, and SAC Capital.

24. In 2010, Darcy Flynn, an SEC attorney employed by the Enforcement Division with direct responsibility for managing the disposition of the Division's records, internally raised questions about and concerns with the lawfulness of the SEC's decades-long policy and practice of destroying records of preliminary investigations, however defined and including MUIs. That individual also sought guidance from NARA about the legality of the SEC's policy and practice of destroying investigative files.

25. In response, Paul Wester, then NARA's director of modern records, sent a letter to the SEC dated July 29, 2010, asking the agency to investigate the matter and, upon confirming federal records have been destroyed improperly, to ensure no further destruction of records occurs and to provide NARA with a written report within 30 days.

26. SEC officials discussed internally how to respond to Mr. Wester's letter, acknowledging an admission by the SEC as to what had been destroyed could lead to criminal liability. Four days later, on August 2, 2010, the SEC responded to NARA in a letter that

included an assertion from the Enforcement Division it "is not aware of any specific instances of the destruction of records from any other MUI." The SEC went on to say, "we cannot say with certainty that no such documents have been destroyed over the past 17 years." The SEC further advised NARA the Enforcement Division had taken steps "to ensure that no MUI records are destroyed while we review this issue."

27. Notwithstanding these assurances, one year later it was reported the SEC still was destroying investigative files, including a wider range of investigative documents than the previously identified MUIs. In September 2011, longtime SEC employee Darcy Flynn, through his counsel, sent a letter to Chairman Schapiro and SEC Inspector General H. David Kotz alerting them to the continuing policy and practice of the SEC of destroying investigative records, including records of formal investigations. According to Mr. Flynn, this policy has resulted in the destruction of approximately 75 percent of documents generated by Enforcement Division staff in the course of formal investigations. Further, Enforcement Division staff were authorized to dispose of all internal emails upon closing investigations.

28. In response, Senator Charles E. Grassley, Ranking Member of the Senate Committee on the Judiciary, sent a letter to Chairman Schapiro on August 17, 2011, seeking information as to whether and why the SEC routinely destroyed MUIs; whether or not the SEC was concerned destroying those files would harm future investigations; whether the SEC could retrieve any of the destroyed information; whether the destroyed files related in part to certain major fraudulent activities such as those committed by Bernard Madoff and Goldman Sachs; whether current SEC policy authorized the destruction of any files related to MUIs that do not progress to a formal SEC order; and the SEC's understanding of its legal obligations to maintain and archive records

related to MUIs.

29. The following day, on August 18, 2011, NARA issued a statement concerning the SEC's destruction of investigative files. That statement noted in part, "Because a NARA-approved disposition schedule did not exist for these records, the SEC did not have authority to dispose of them per the Federal Records Act . . ." The NARA statement asserted NARA has been working with the SEC in the last year "to prevent future unauthorized destruction of MUI files." NARA claimed to be "satisfied that the destruction has stopped," but indicated its continuing "concern[] that the SEC has been slow in creating records schedules for review and approval by the Archivist of the United States that will ultimately determine how long these MUI records need to be retained."

30. NARA apparently reached the conclusion that a NARA-approved disposition schedule did not exist for the destroyed records based on incomplete and misleading information the SEC had provided NARA, including the SEC's response letter of August 2, 2010.

31. On September 14, 2011, SEC Enforcement Director Robert S. Khuzami sent a carefully worded letter to Sen. Grassley purporting to respond to his August 17, 2011 letter. According to Mr. Khuzami, the SEC changed its guidance in July 2010, to provide that all MUI documents would now be covered by the NARA-approved records retention schedule for investigative files. Mr. Khuzami did not state whether the SEC has complied with this newer guidance since that date. Nor did he dispute recent public accounts that beyond the destruction of closed MUIs, the SEC also has improperly destroyed other investigative files, including records of formal investigations.

32. Mr. Khuzami also acknowledged that under the SEC's mandated destruction of

closed MUIs, the SEC did not retain elsewhere in its files any information about a closed MUI beyond the title of the matter, its source, general subject matter, the SEC staff members involved, the dates if was opened and closed, and other parties related to the inquiry. In other words, the SEC did not retain any documents or other evidence gathered as part of the MUI process.

33. In his letter of September 14, 2011, Mr. Khuzami further confirmed the subjects of the closed and improperly destroyed MUIs included, *inter alia*, Bernard Madoff, Goldman Sachs, Wells Fargo, Bank of America, Deutsche Bank, Lehman Brothers, and SAC Capital, and that the destroyed MUIs were both recent and dating back almost 20 years. Mr. Khuzami admitted that as a result of the SEC's mandated document destruction policy, "some documents from these MUIs were not retained."

34. Mr. Khuzami also identified numerous other potential sources for some of the destroyed MUIs, including sources inside and outside of the SEC, public sources, regulated entities, the Bluesheet Database, and the SRA Market Surveillance Referral System. Nevertheless, on information and belief, the SEC has not taken any steps to retrieve any of the destroyed files and missing information.

35. Based on the emerging evidence the SEC has continued to destroy investigative files, despite its assurances to the contrary, Mr. Wester send a second letter to the SEC dated September 9, 2011. Mr. Wester asked the SEC to review the allegations of document destruction, to determine whether any portions of investigative case files may have been destroyed without complying with the applicable records disposition schedule, and to determine if the closed case files were reviewed by staff and appropriate selection criteria applied under that schedule.

36. NARA further directed the SEC to provide a report within 30 days containing specified information about the destroyed records as well as the extent to which any of the destroyed records are recoverable.

37. On information and belief, despite knowledge of the SEC's destruction of investigative records, Chairman Schapiro has failed to request that the attorney general initiate an enforcement action to prevent the further destruction of federal records or to take any other action to recover those records previously destroyed.

## **PLAINTIFF'S CLAIMS FOR RELIEF**

## **CLAIM ONE**

### **For A Declaratory Judgment The Document Destruction Policy Issued And Implemented By The SEC Violates The FRA**

38. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

39. Under the FRA, the head of each federal agency must make and preserve as federal records all records containing adequate and proper documentation of the organization, functions, policies, decision, procedures, and essential transactions of the agency. 44 U.S.C. §§ 3101 and 3301.

40. The FRA also mandates that records of the United States government not subject to General Records Schedules may be destroyed only with the approval of the Archivist, following the agency's submission of a list of records in the custody of the agency that do not appear to have sufficient value to warrant their further preservation as well as schedules proposing their disposal. 44 U.S.C. § 3303.

41. Defendants' policies and directives requiring the destruction of preliminary investigative records, however defined and including MUIs, without approval from the Archivist violate the FRA by affirmatively directing the destruction of records that document the SEC's organization, functions, policies, decisions, procedures, and essential transactions.

42. Defendants' policies and directives unlawfully requiring the destruction of preliminary investigative records, however defined and including MUIs, without approval from the Archivist have harmed and will continue to harm plaintiff by depriving plaintiff of access to Enforcement Division records and the ability to make use of those records to educate the public and ensure the SEC's accountability for its actions.

43. Plaintiff is therefore entitled to relief in the form of a declaratory judgment that the SEC and SEC Chairman Schapiro are in violation of their non-discretionary statutory responsibilities under the FRA. Plaintiff also is entitled to relief in the form of a declaratory judgment that the directive of the SEC requiring the destruction of preliminary investigative records, however defined, without approval of the Archivist is contrary to law.

## CLAIM TWO

### For A Writ of Mandamus Compelling Defendants SEC And Chairman Schapiro To Comply With Their Non-Discretionary Duties Under the FRA

44. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

45. The FRA is clear and the duties thereunder plainly defined: the head of each federal agency must make and preserve all records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency

as federal records. 44 U.S.C. §§ 3101 and 3301.

46. Furthermore, the head of each federal agency has a clear and plainly defined statutory responsibility to establish and maintain a records management program that provides for effective controls over these federal records, as well as to cooperate with the Archivist in applying standards and procedures for the maintenance and security of the records deemed appropriate for preservation. 44 U.S.C. § 3102. The head of each federal agency also must establish safeguards against the removal or loss of records he or she determines to be necessary and required by regulations of the Archivist. 44 U.S.C. § 3105.

47. In furtherance of the standards and procedures for the maintenance and security of records, as well as the safeguards against removal or loss as required by regulations of the Archivist, the agency head, prior to the destruction of any federal records, must submit to the Archivist a list of any records in the custody of the agency that do not appear to have sufficient value to warrant their further preservation, and schedules proposing their disposal. 44 U.S.C. § 3303. The FRA is clear: unless subject to General Records Schedules, records of the United States government may be destroyed only by following this procedure. 44 U.S.C. § 3314.

48. The duties imposed on defendants SEC and Chairman Schapiro by these provisions of the FRA are ministerial in nature, with no discretion allowed on their part.

49. Plaintiff, a non-profit organization that makes information in SEC and other government records available to the public, has a direct interest in ensuring these records are maintained, preserved, and made accessible to the public in accordance with federal law.

50 By adopting a policy and practice that mandates the destruction of preliminary investigative records, however defined and including MUIs, without prior approval from the

Archivist defendants SEC and Chairman Schapiro have violated their duties under 44 U.S.C. §§ 3101, 3102, 3105, 3301, 3303 and 3314. As a result, plaintiff is harmed by being denied present and future access to important documents that would shed light on the conduct of public officials.

51. By failing to install an adequate system to preserve federal records at the SEC, defendants SEC and Chairman Schapiro have violated their duties under 44 U.S.C. §§ 3101, 3102, 3105, 3301, 3303 and 3314. As a result, plaintiff is harmed by being denied present and future access to important documents that would shed light on the conduct of public officials.

52. Plaintiff is therefore entitled to relief in the form of a writ of mandamus ordering defendants SEC and Chairman Schapiro to comply with the statutory duties to establish an adequate system that ensures no records are destroyed unless pursuant to a NARA-approved disposition schedule.

## CLAIM THREE

### For An Order Compelling Defendants SEC And Chairman Schapiro To Initiate Action To Restore Destroyed Records

53. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Under the FRA, the head of each federal agency must notify the Archivist of any actual destruction of records in the custody of the agency of which he or she is the head that shall come to the agency head's attention and, with the assistance of the Archivist, must initiate action through the attorney general for the recovery of those records. 44 U.S.C. § 3106.

55. Furthermore, if the head of the agency does not initiate an action for recovery or other redress within a reasonable period of time after being notified of the destruction, the

Archivist must request that the attorney general initiate such action. 44 U.S.C. § 3106.

56. By failing to take any action to recover the destroyed investigative files or prevent the further destruction of investigative records, defendants SEC and Chairman Schapiro have violated their duties under 44 U.S.C. § 3106 to request that the attorney general initiate action or seek other legal redress to recover the destroyed records. As a result, plaintiff has been harmed by being denied present and future access to important documents that would shed light on the conduct of public officials and the actions and effectiveness of the SEC's Enforcement Division.

57. Plaintiff is therefore entitled to relief in the form of a declaratory order that defendants SEC and Chairman Schapiro are in violation of their statutory responsibilities under 44 U.S.C. § 3106, and an injunction compelling them pursuant to that statute to request that the attorney general initiate action or seek other legal redress to recover the improperly destroyed records and prevent further record destruction.

## CLAIM FOUR

### For A Writ of Mandamus Compelling Defendants SEC And Chairman Schapiro To Recover Deleted Records.

58. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

59. The FRA is clear and the duties thereunder plainly defined: the head of each federal agency is required to notify the Archivist of any actual destruction of records in the custody of the agency of which he or she is the head that shall come to the agency head's attention and, with the assistance of the Archivist, must initiate action through the attorney general for the recovery of those records. 44 U.S.C. § 3106.

60. The duties imposed on the SEC and Chairman Schapiro by these statutory provisions are ministerial in nature, with no discretion allowed on their part.

61. Plaintiff, a non-profit organization that makes information in SEC and other government records available to the public, has a direct interest in ensuring these records are maintained, preserved, and made accessible to the public in accordance with federal law.

62. By failing to take any steps to recover and restore the destroyed investigative records, defendants SEC and Chairman Schapiro are violating their clearly mandated ministerial duties under 44 U.S.C. § 2905 to request that the attorney general initiate action or seek other legal redress to recover the improperly destroyed investigative records. As a result, plaintiff is harmed by being denied present and future access to important documents that would shed light on the conduct of public officials and the actions and effectiveness of the SEC's Enforcement Division.

63. Plaintiff is therefore entitled to relief in the form of a writ of mandamus, ordering defendants SEC and Chairman Schapiro to comply with the statutory duty imposed by 44 U.S.C. § 2905 to request that the attorney general initiate action or seek other legal redress to recover the destroyed investigative records and prevent any further unauthorized destruction.

## CLAIM FIVE

### For An Order Compelling Defendants SEC And Chairman Schapiro To Obtain NARA-Approved Disposition Schedules For All Enforcement-Related Federal Records

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Under the FRA, the head of each federal agency must make and preserve as federal records all records containing adequate and proper documentation of the organization, functions,

policies, decisions, procedures, and essential transactions of the agency. 44 U.S.C. §§ 3101 and 3301.

66. Furthermore, the head of each federal agency must establish and maintain a records management program that provides for effective controls over these federal records, as well as cooperate with the Archivist in applying standards and procedures for the maintenance and security of the records deemed appropriate for preservation. 44 U.S.C. § 3102. The head of each federal agency must also establish safeguards against the removal or loss of records he or she determines to be necessary and required by regulations of the Archivist. 44 U.S.C. § 3105.

67. In furtherance of the standards and procedures for the maintenance and security of records, as well as the safeguards against removal or loss as required by regulations of the Archivist, the head of each agency, prior to the destruction of any federal records, must submit to the Archivist a list of any records in the custody of the agency that do not appear to have sufficient value to warrant their further preservation, as well as schedules proposing their disposal. 44 U.S.C. § 3303. The FRA is clear: records of the United States government that are not subject to General Records Schedules may be destroyed only by following this procedure. 44 U.S.C. § 3314.

68. Despite the clear provisions for the disposition or destruction of government records, thousands of investigative files in the possession of the SEC's Enforcement Division were destroyed without submission to or consideration by the Archivist.

69. Had an adequate system for scheduling, preserving, and archiving these records been in place, such records would not have been destroyed, and they could have been preserved and disposed of in accordance with the procedures mandated by the FRA. By failing to install such a

system, defendants SEC and Chairman Schapiro have violated their duties under 44 U.S.C. §§ 3101, 3102, 3105, 3301, 3303, and 3314 to establish an adequate system for the preservation of federal records. As a result, plaintiff is harmed by being denied present and future access to important documents that would shed light on the conduct of public officials and the actions and effectiveness of the SEC's Enforcement Division.

70. Plaintiff is therefore entitled to relief in the form of a declaratory order that defendants SEC and Chairman Schapiro are in violation of their statutory responsibilities under 44 U.S.C. §§ 3101, 3102, 3105, 3301, 3303 and 3314, and an injunction compelling them pursuant to those statutes to establish an adequate system for archiving and preserving investigative records, and disposing of such records only pursuant to NARA-approved disposition schedules.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(1) Declare the document destruction policy issued and implemented by the SEC violates federal law;

(2) Order all defendants, in the form of injunctive and mandamus relief, to develop and implement an effective records management system that ensures against the loss or destruction of SEC records except pursuant to NARA-approved disposition schedules;

(3) Order all defendants, in the form of injunctive and mandamus relief, to initiate action through the attorney general and internally to recover destroyed investigative files and prevent the further destruction of those files in violation of federal law;

(4) Award plaintiff its costs, expenses, and reasonable attorneys' fees in this action; and

(5) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Anne L. Weismann

Anne L. Weismann
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 434584
Citizens for Responsibility
 and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
202-408-5565 (telephone)
202-588-5020 (fax)
aweismann@citizensforethics.org

Attorneys for Plaintiff

Dated: September 27, 2011