**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

      **Plaintiff,**

           **v.**                         **Civil Action No.  11-1732 (JEB)**

U.S. SECURITIES AND EXCHANGE
COMMISSION, *et al.*,

      **Defendants.**

## MEMORANDUM OPINION

In the wake of a number of headline-grabbing scandals involving violations of the federal

securities laws, Plaintiff Citizens for Responsibility and Ethics in Washington submitted requests

under the Freedom of Information Act to the Securities and Exchange Commission seeking

documents related to that agency's enforcement efforts.  One of these requests, dated

September 14, 2011, sought records explaining the agency's reasons for not proceeding with a

number of closed preliminary investigations.  Before receiving the SEC's response to its FOIA

request, CREW brought this suit against the Commission and its Chairman, Mary L. Schapiro,

under the Federal Records Act.  Plaintiff's Complaint contends that Defendants failed to comply

with the FRA through 1) the SEC's improper policy regarding the retention of preliminary

investigative materials and 2) its failure to undertake efforts to recover and restore records

destroyed pursuant to the policy.

Defendants have now moved to dismiss all claims for lack of justiciability under

Fed. R. Civ. P. 12(b)(1) and certain causes of action for failure to state a claim under

Rule 12(b)(6).  Although CREW has sufficiently alleged injury-in-fact to survive Defendants'

1

standing challenges, its claims attacking the SEC's document-retention policy (Counts I, II, and V) are moot due to the SEC's abandonment of the challenged policy in July 2010 and its subsequent efforts to implement a policy that will comply with the FRA.  Plaintiff's remaining counts (III and IV), however, which concern Defendants' failure to take action to recover documents that were unlawfully destroyed, may proceed.  The Court, therefore, will grant in part and deny in part Defendants' Motion.

**I.      Background**

> A.      <u>The Federal Records Act</u>

The Federal Records Act is a collection of statutes governing the creation, management, and disposal of federal records.  44 U.S.C. §§ 2101 *et seq.*, 3101 *et seq.*, 3301 *et seq.*  The statute was enacted to ensure, *inter alia*: (1) "efficient and effective records management"; (2) "[a]ccurate and complete documentation of the policies and transactions of the Federal Government"; and (3) "[j]udicious preservation and disposal of records." 44 U.S.C. § 2902; <u>see</u> <u>Armstrong v. Bush</u>, 924 F.2d 282, 285 (D.C. Cir. 1991) (providing background on FRA).

Pursuant to the FRA, heads of federal agencies are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency…." 44 U.S.C. § 3101.  Each agency head shall also "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," <u>id.</u> § 3102, and "shall establish safeguards against the removal or loss of records he determines to be necessary and required by regulations of the Archivist [the head of the National Archives and Records Administration]." <u>Id.</u> § 3105.

A series of provisions within the FRA sets forth a structure whereby the Archivist and agency heads are to work together to ensure that documents are not unlawfully destroyed. The Archivist

> shall notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to his attention, and assist the head of the agency in initiating action through the Attorney General for the recovery of records wrongfully removed and for other redress provided by law.

Id. § 2905(a); see also id. § 3106 (providing that each agency head shall notify Archivist of any unlawful removal or destruction of records and shall initiate, through Attorney General, an action for the recovery of unlawfully destroyed documents). If the agency head does not initiate such an action, the Archivist "shall request the Attorney General to initiate such action, and shall notify the Congress when such a request has been made." Id. § 3106.

B.    The Current Action

According to CREW's Complaint, which the Court must presume true for purposes of this Motion, it is being denied "present and future access to important documents that would shed light on the conduct of public officials and the actions and effectiveness of the SEC's Enforcement Division" as a result of the SEC's failure to comply with the FRA. Compl., ¶ 62; see also id., ¶¶ 42, 51, 56, 69. Plaintiff's suit does not seek review of an agency's denial of a particular FOIA request; instead, its claims challenge Defendants' failure to comply with their duties regarding the agency's retention of documents, as set forth in the FRA. The Complaint asserts five causes of action: Count I seeks a declaratory judgment that the document-destruction policy issued and implemented by the SEC violates the FRA; Count II seeks a writ of mandamus compelling Defendants to comply with their non-discretionary duties under the FRA regarding document preservation; Count III seeks a declaratory order compelling Defendants to initiate

action to restore destroyed records; Count IV seeks a writ of mandamus compelling Defendants

to recover deleted records; and Count V seeks an order compelling Defendants to obtain

approval of disposition schedules by the NARA for all enforcement-related federal records.

The specific documents that CREW claims have been unlawfully destroyed involve

records relating to the preliminary work that the SEC undertakes prior to the commencement of a

formal investigation (including "matters under inquiry (MUIs)," "informal investigations," and

"preliminary investigations"). Id., ¶¶ 16-17.  Plaintiff alleges that the agency has been

destroying these documents pursuant to "a written directive in place at least since 1998

affirmatively mandating the SEC enforcement staff destroy any records created or obtained in

connection with closed MUIs." Id., ¶ 22.

CREW, a § 501(c)(3) non-profit corporation,  "uses a combination of research, litigation,

and advocacy" to advance its mission of "protecting the right of citizens to be informed about the

activities of government officials" and "ensuring the integrity of government officials." Id., ¶ 4.

In furtherance of this mission, CREW "frequently uses government records made available to it"

under FOIA. Id., ¶ 5.

CREW currently has two FOIA requests pending with the SEC, including one request

seeking

> all records explaining or describing in any way the SEC's reasons for not
> proceeding with any closed preliminary investigations, including but not
> limited to Matters Under Inquiry ("MUI"), of: Bernard L. Madoff;
> Goldman Sachs trading in AIG credit default swaps in 2009; financial
> fraud at Wells Fargo and Bank of America in 2007 and 2008; and insider
> trading at Deutsche Bank, Lehman Brothers, and SAC Capital.

Id., ¶ 5; Opp., Exh. B (September 14, 2011, FOIA Request).  In support of this request, CREW

attached a letter from Robert S. Khuzami, Director of the Division of Enforcement at the SEC.

In the letter, Khuzami responds to a series of questions posed by Senator Charles Grassley

regarding the SEC Enforcement Division's document-retention policy for "Matters Under

Investigation."  Opp., Exh. B (Khuzami Letter), Exh. C.  The Khuzami letter provides

background surrounding the SEC's use of MUIs and how documents related to such preliminary

investigations are retained.  Id.  The letter repeatedly asserts that the prior policy providing for

the destruction of such documents was modified in July 2010 with the implementation of new

guidance instructing SEC staff "to treat documents generated in closed MUIs in the same manner

as documents related to investigations."  Id. at 4.  In describing the impact of the agency's prior

policy regarding these materials, the letter acknowledges that given the old MUI retention

guidance, "it is likely that some documents from these closed MUIs were not retained."  Id. at 6.

## II.      Legal Standard

      Defendants' Motion invokes the legal standards for dismissal under Rules 12(b)(1) and

12(b)(6).  In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the

complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences

that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979))

(internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253

(D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a

factual allegation," nor an inference unsupported by the facts set forth in the Complaint.

Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain,

478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

      To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of

proving that the Court has subject-matter jurisdiction to hear its claims.  See Lujan v. Defenders

of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20,

24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case — a dismissal under Rule 12(b)(1) on ripeness grounds — the court may consider materials outside the pleadings"); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.   Analysis

In seeking to dismiss Plaintiff's suit, Defendants raise three central arguments.  First, Defendants contend that all of Plaintiff's claims are not justiciable.  Second, Defendants maintain that, even if they are, Counts III and IV should be dismissed because they improperly ask the Court to compel Defendants to request legal action by the Attorney General.  And third, Defendants argue that Plaintiff's counts seeking writs of mandamus (II and IV) must be dismissed as no basis for such relief exists.  The Court will address each in turn.

### A.   Justiciability of Plaintiff's Claims

Defendants' justiciability argument is similarly divisible into three constituent parts: (1) Plaintiff lacks standing to bring its suit, (2) Plaintiff's claims challenging a policy that is no longer in effect are moot, and (3) Plaintiff's claims seeking injunctive relief regarding policies

that have not yet been adopted are not <u>ripe</u> for review.  Each of Defendants' challenges to the

justiciability of Plaintiff's claims is properly brought under Rule 12(b)(1).  See <u>Amador Cnty.,</u>

<u>Cal. v. Salazar</u>, 640 F.3d 373 (D.C. Cir. 2011) (standing); <u>Del Monte Fresh Produce Co. v. U.S.</u>,

570 F.3d 316 (D.C. Cir. 2009) (mootness); <u>Venetian Casino</u>, 409 F.3d at 366 (ripeness).

> *1.     Standing*

Defendants attack Plaintiff's Article III standing on two grounds.  First, Defendants

contend that Plaintiff has not suffered an injury-in-fact for any of its claims.  <u>See</u> Mot. at 2.

Second, Defendants alternatively argue that even if Plaintiff has pled a cognizable injury, it

cannot show redressability.

Article III of the Constitution limits the power of the federal judiciary to the resolution of

"Cases" and "Controversies."  U.S. Const. art. III, § 2; <u>see also</u> <u>Allen v. Wright</u>, 468 U.S. 737,

750 (1984) (discussing case-or-controversy requirement).  "This limitation is no mere formality:

it 'defines with respect to the Judicial Branch the idea of separation of powers on which the

Federal Government is founded.'"  <u>Dominguez v. UAL Corp.</u>, 666 F.3d 1359, 1361 (D.C. Cir.

2012) (quoting <u>Allen</u>, 468 U.S. at 750).  Because "standing is an essential and unchanging part of

the case-or-controversy requirement of Article III," <u>Lujan</u>, 504 U.S. at 560, finding that a

plaintiff has standing is a necessary "predicate to any exercise of [the Court's] jurisdiction."  <u>Fla.</u>

<u>Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996).  Every plaintiff in federal court

"bears the burden of establishing the three elements that make up the 'irreducible constitutional

minimum' of Article III standing: injury-in-fact, causation, and redressability."  <u>Dominguez</u>, 666

F.3d at 1362 (quoting <u>Lujan</u>, 504 U.S. at 560-61).  Defendants challenge both the first and third

elements here.

> a.     Injury-in-fact

Defendants begin by challenging CREW's alleged injury – namely, its impaired ability to access SEC records from preliminary investigations due to the agency's violation of the FRA – as insufficient to support standing both because it is not particular to Plaintiff and because it is only speculative or hypothetical.  Mot. at 13-16.

To establish that it has suffered an actual injury, Plaintiff must point to "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  <u>Lujan</u>, 504 U.S. at 560 (internal citations and quotation marks omitted).  Where a plaintiff seeks injunctive or declaratory relief – as CREW does in Counts I, II, and V –  a plaintiff "must allege a likelihood of future violations of [its] rights . . . not simply future effects from past violations." <u>Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.</u>, 28 F.3d 1268, 1273 (D.C. Cir. 1994).   "'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury.'" <u>Natural Res. Def. Council v. Pena</u>, 147 F.3d 1012, 1022 (D.C. Cir. 1998) (quoting <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994)); <u>see also</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983).

Plaintiff claims that it has alleged sufficient injury, pointing to its outstanding SEC FOIA requests for documents that cannot be fully satisfied because of the SEC's admitted destruction of preliminary investigative documents.  Opp. at 14.  Plaintiff further alleges that it "plans to file future FOIA requests with the SEC" and that such requests will also be impaired by Defendants' conduct.  Opp., Exh. A (Decl. of Melanie Sloan), ¶ 8.  CREW explains its injury as an "inability to obtain through the FOIA information necessary to accomplish CREW's mission," which is "traceable directly to the SEC's policy and practice of unlawfully destroying and failing to

8

restore investigative files." Opp. at 13. Specifically, CREW alleges that Defendants' actions

are:

- "depriving plaintiff of access to Enforcement Division records and the ability to make use of those records to educate the public and ensure the SEC's accountability for its actions," Compl., ¶ 42;

- "den[ying plaintiff] present and future access to important documents that would shed light on the conduct of public officials," id., ¶¶50, 51; and

- "den[ying plaintiff] present and future access to important documents that would shed light on the . . . actions and effectiveness of the SEC's Enforcement Division." Id., ¶¶ 56, 62, 69.

CREW states that it "frequently uses government records made available to it under

FOIA" and that it "has filed hundreds of FOIA requests with a wide variety of government

agencies, including the SEC." Id., ¶ 5; see also Sloan Decl., ¶¶ 3, 5, 7, 9. CREW summarizes

two FOIA requests that are currently pending before the SEC, which seek

(1) documents sufficient to enable CREW to ascertain whether the SEC's Enforcement Division has made promised reforms that have resulted in the Division's increased effectiveness, and (2) documents sufficient to test the accuracy of public statements by SEC Enforcement Chief Robert Khuzami that destruction of closed cases has not harmed the SEC's investigative efforts.

Compl., ¶ 5. CREW provides additional details regarding the second request in its Opposition.

See Opp. at 15 & Exh. B (September 14, 2011, FOIA request). The precise language in CREW's

September request sought

records explaining or describing in any way the SEC's reasons for not proceeding with any closed preliminary investigations, including but not limited to Matters Under Inquiry ("MUI"), of: Bernard L. Madoff; Goldman Sachs trading in AIG credit default swaps in 2009; financial fraud at Wells Fargo and Bank of America in 2007 and 2008; and insider trading at Deutsche Bank, Lehman Brothers, and SAC Capital.

Opp., Exh. B.

There is some confusion about the requests, and Defendants challenge the September request as distinct from those CREW refers to in its Complaint.  See Reply at 3 n.2.  An examination of the September request, however, demonstrates it is in fact the second request referenced in the Complaint, as it specifically cites and attaches the September 14, 2011, Robert Khuzami letter.  While Plaintiff could perhaps have more artfully described the pending SEC FOIA requests in its pleadings, the Complaint and exhibits submitted with its brief make clear that CREW has at least one pending FOIA request that involves exactly the type of preliminary investigatory materials that likely have been destroyed.

Defendants nevertheless argue that there is no basis for concluding that any proper response to CREW's September FOIA request would necessarily include records from closed cases that have been destroyed (and that, in addition, perhaps FOIA exemptions would apply), see Reply at 3; this argument, however, ignores the agency's own admission that at least some documents from the closed MUIs were destroyed and are thus no longer available.  See Khuzami Letter at 4.  While it is possible that some preliminary investigatory materials may still be found in response to CREW's request, it is hard to understand how the agency's ability to respond to CREW's request will not in some way be impaired.  Because Defendants' search for records in response to CREW's request is very likely compromised by the admitted destruction of documents, the Court finds that Plaintiff has alleged a sufficient injury-in-fact.

While the D.C. Circuit has not yet addressed the issue of whether a party's impaired access to documents sought under FOIA constitutes sufficient injury under the FRA, precedent from other district courts within this District supports this Court's determination that Plaintiff has standing.  For example, in Citizens for Responsibility and Ethics in Washington v. Executive Office of the President, 587 F. Supp. 2d 48 (D.D.C. 2008), the court concluded that the plaintiff

had standing to bring FRA claims where it had alleged that it had FOIA requests for e-mails

"currently pending with [the defendant agencies] and intend to file future requests for e-mails."

Id. at 60-61; see also Public Citizen v. Carlin, 2 F. Supp. 2d 1, 6 (D.D.C. 1997) (plaintiffs who

had filed FOIA requests in past and intended to make additional requests in future "face[d] a real

risk that records will not be available to them" sufficient to support standing), rev'd on other

grounds, 184 F.3d 900 (D.C. Cir. 1999).

   In the absence of outstanding requests, a court within this District has held that future

injuries, "while certainly plausible—are too speculative and remote at this point to give CREW

standing to seek prospective relief." Citizens for Responsibility and Ethics in Washington v.

United States Dept. of Homeland Security, 527 F. Supp. 2d 101, 106 (D.D.C. 2007).   The court

went on to note, "That CREW may one day file another FOIA request with the DHS does not

represent a cognizable, palpable injury which presents a case or controversy for the Court to

consider." Id.  The court in DHS could not discern "when, if ever, CREW will seek access to

[the specific records at the center of the dispute] in the [agency's] possession.  While there is a

reasonable possibility that CREW will seek these records in the future, this presumption is not

enough to establish an imminent, non-speculative injury-in-fact." Id. at 107.

   As Plaintiff does have currently pending FOIA requests, this case is much closer to EOP

than it is to DHS.  As a result, Defendants have not established such uncertainty surrounding

Plaintiff's pending requests that would lead this Court to find that the alleged injury is too

speculative for purposes of Article III standing.  See Am. Historical Ass'n v. Nat'l Archives &

Records Admin, 310 F. Supp. 2d 216 (D.D.C. 2004) (finding future injury not sufficiently

imminent where plaintiffs had no outstanding requests for documents and it was uncertain

whether future requests would be impaired by alleged delays); CREW v. Dept. of Ed., 538 F.

Supp. 2d 24 (D.D.C. 2008) (plaintiff's allegations of injury-in-fact were too speculative to show

standing where court would have had to accept a number of speculative inferences and

assumptions to ultimately determine whether agency would be unable to process plaintiff's

request due to challenged conduct).

Here, a real risk of documents being unavailable exists, as Defendants have

acknowledged that "some documents from these closed MUIs were not retained." See Khuzami

Letter at 6.  Because Plaintiff's alleged injury includes outstanding FOIA requests that involve

documents that likely will be unavailable due to the challenged policy, this Court need not

determine whether the intent to file future requests alone, see Reply at 4 n.3, provides sufficient

injury for standing purposes.  In sum, as the harm to Plaintiff is both particular and non-

speculative, the Court finds it has sufficiently alleged injury.

> b.      Redressability

Defendants further challenge Plaintiff's standing as to Counts III and IV by arguing that

CREW is unable to satisfy the redressability prong because "plaintiff's relief is dependent on a

third party [the Attorney General] not subject to this suit."  Mot. at 17.  This argument, however,

is misguided.  Plaintiff's Complaint does not seek an order from this Court requiring the

Attorney General to undertake a specific action.  Instead, Plaintiff seeks an order requiring the

Defendants to ask the Attorney General to initiate legal action.  Opp. at 17-18; see EOP,

587 F. Supp. 2d at 62 (finding plaintiffs' injury-in-fact likely to be redressed as relief sought – an

order requiring Archivist and agency head to ask the Attorney General to initiate legal action –

was "precisely the relief outlined in the FRA…" (relying on Armstrong v. Bush, 924 F.2d 282,

295 (D.C. Cir. 1991)).  As discussed below in Section III.B., the FRA authorizes the relief

Plaintiff requests, defeating Defendants' redressability argument.  The Court, accordingly, finds

that CREW has sufficiently satisfied the Article III redressability requirement.

> 2.  *Mootness*

Defendants next argue that even if Plaintiff has standing to bring suit, its claims are

nonetheless moot as the challenged document-destruction policies are "no longer in effect and

have no likelihood of being reinstated."  Mot. at 18.  Defendants do not limit their mootness

argument to specific claims; however, because their discussion focuses only on the agency's

document-retention policies (Counts I, II, and V) – and makes no argument regarding the

recovery of documents that have already been unlawfully destroyed (Counts III and IV) – the

Court will consider this argument only as it relates to the former counts.

The mootness doctrine limits federal courts to deciding actual, ongoing controversies.

American Bar Ass'n v. F.T.C., 636 F.3d 641, 645 (D.C. Cir. 2011).  "A case is moot when 'the

challenged conduct ceases such that there is no reasonable expectation that the wrong will be

repeated' in circumstances where 'it becomes impossible for the court to grant any effectual

relief whatever to the prevailing party.'"  United States v. Philip Morris USA, Inc., 566 F.3d

1095, 1135 (D.C. Cir. 2009) (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)).

The burden of establishing mootness rests with the party seeking dismissal, and this burden is a

heavy one.  Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n, 628 F.3d 568, 576 (D.C. Cir.

2010).

A case will not be moot, however, where a defendant has voluntarily stopped the

transaction, but may "return to [its] old ways."  United States v. W.T. Grant Co., 345 U.S. 629,

632 (1953) (recognizing voluntary cessation as one exception to mootness doctrine).  A party's

voluntary cessation will be found to moot a case where: "(1) there is no reasonable expectation

. . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008) (internal citations and quotation marks omitted). The "heavy" burden of persuading the court that the challenged conduct cannot reasonably be expected to resume lies with the party asserting mootness. Grant, 345 U.S. at 633.

As Defendants note in their Motion, other Circuits have consistently recognized that where the defendant is a government actor – and not a private litigant – there is less concern about the recurrence of objectionable behavior. Mot. at 19-20; see Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1116 (10th Cir. 2010) (recognizing that while there is "heavy burden" surrounding voluntary-cessation exception, government officials who have discontinued challenged practices are often able to overcome burden); Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."); Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."); Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla., 382 F.3d 1276, 1284 (11th Cir. 2004) (recognizing presumption, but noting that where government actor expresses intent to reenact offending policy, presumption would not apply); Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.").

14

Changed policy need not come in the form of a formal revocation of the previous policy, as long as the assurance of discontinuation is sufficient to establish that there is no reasonable expectation that the unauthorized actions will resume.  Ragsdale, 841 F.2d at 1365-66 (finding new policy mooted claims despite fact that state had not acted to remove or amend statute and regulations, as court was persuaded that conduct had "been discontinued with no real prospect that it will be repeated").

Defendants argue that Plaintiff's claims concerning the SEC's preliminary investigative policy that is no longer in effect are moot, as the agency has abandoned the challenged policy and is already collaborating with NARA to "develop a new, FRA-compliant policy."  Mot. at 19, 21.  Plaintiff, however, adamantly disputes Defendants' claims that the challenged policy has been abandoned.  Opp. at 19-23.  It argues, among other things, that 1) there is a lack of evidence before the Court regarding the SEC's new policy; 2) there are questions as to whether the new policy is in fact being implemented; 3) the claimed "new policy" is an interim, non-final policy; and 4) there is a reasonable possibility that the previous policy will be reenacted.  Id., at 19-22.

 Plaintiff's concerns, however, are largely speculative, and the Court does not find record evidence to undermine Defendants' claim that the SEC has abandoned its previous policy for preliminary investigative materials and that it is actively developing a new policy that will be approved by NARA.  While Plaintiff argues that the "second-hand representations in the IG Report" are insufficient to establish that a new policy is in effect, the Khuzami Letter (submitted by Plaintiff) provides first-hand representations from the SEC regarding the new policy.  See Khuzami Letter at 4.  Plaintiff itself relies on the Khuzami Letter throughout its Complaint and Opposition for other propositions, and it does not question the accuracy of the SEC's representations regarding the "new policy" as set forth in the letter.  The Court need not take

judicial notice of the contents of the Office of Inspector General report to determine that

Defendants have abandoned the prior policy regarding preliminary investigative materials;

however, the existence of the report provides the Court with additional comfort that the SEC is

taking seriously Plaintiff's concerns with the prior policy and is undertaking efforts to ensure that

any unlawful destruction is discontinued.

While Plaintiff's brief raises concerns about the possible recurrence of unlawful

document destruction, Opp. at 22, there are no facts to suggest any intent by the SEC to abandon

its efforts to comply with the FRA or to suggest that the SEC's new policy is some sort of "sham

for continuing possibly unlawful conduct," Sossamon, 560 F.3d at 325, or that the new policy is

somehow not "genuine." Ragsdale, 1841 F.2d at 1365 (citing 13A Wright, Miller & Cooper,

Federal Practice and Procedure § 3533.7, at 353 (2d ed. 1984)).  Although Plaintiff's

speculations about potential recurrence might be sufficient were Defendants private litigants,

such conjecture is insufficient here, where the SEC is a governmental entity.  The Court finds

that the SEC's abandonment of its prior policy and its efforts to develop a new policy that will

comply with the FRA thus moot Counts I, II, and V of Plaintiff's Complaint.  They will,

accordingly, be dismissed without prejudice so that they may be renewed in the event the SEC

does not follow through on the creation of the new policy.

### 3. Ripeness

Defendants' final justiciability argument asserts that Plaintiff's action is not ripe to "the

extent that plaintiff seeks injunctive relief to ensure that any future SEC policies regarding

disposal of MUI records are in compliance with the FRA."  Mot. at 21 (emphasis in original).

Plaintiff's brief states that it makes no such claims regarding future policies.  Opp. at 23 n.15.  In

any event, the only remaining claims (Counts III and IV) deal with the recovery of destroyed

files, not the disposal of MUI records.  There is thus no ripeness debate for the Court to adjudicate.

       B.      <u>Action to Recover and Restore Files</u>

Even if this Counts III and IV are justiciable, Defendants argue they should be dismissed for failure to state a claim "to the extent they request the Court to compel defendants to request legal action by the Attorney General."  Mot. at 22.  Each party relies on <u>Armstrong v. Bush</u>, 924 F.2d 282 (D.C. Cir. 1991), as the relevant authority for its argument.  <u>Armstrong</u> recognized that while the FRA's remedial structure is primarily one of administrative standards and enforcement, a limited private right of action is permitted where the administrative mechanisms are not functioning because of inaction by those who are charged with enforcing the FRA.  This Circuit determined that in certain circumstances it would "not be inconsistent" with the FRA to permit judicial review of the agency head's refusal to seek the initiation of an enforcement action by the Attorney General:

> [I]f the agency head or Archivist does nothing while an agency official destroys or removes records in contravention of agency guidelines and directives, private litigants may bring suit to require the agency head and Archivist to fulfill their statutory duty to notify Congress and ask the Attorney General to initiate legal action.

<u>Id.</u> at 295.

While recognizing that private litigants may bring suit to enforce the FRA in limited circumstances, <u>Armstrong</u> cautioned:

> We do not mean to imply, however, that the Archivist and agency head must initially attempt to prevent the unlawful action by seeking the initiation of legal action.  Instead, the FRA contemplates that the agency head and Archivist may proceed first by invoking the agency's "safeguards against the removal or loss of records," 44 U.S.C. § 3105, and taking such intra-agency actions as disciplining the staff involved in the unlawful action, increasing oversight by higher agency officials, or threatening legal action.

Id. at 296 n.12.

Defendants rely on this language in arguing that private litigants can only bring suit where "no action has been taken by NARA or the agency," and that here the agency undertook sufficient measures to fulfill its duties under the FRA.  Mot. at 24-25 (emphasis in original). Specifically, Defendants point to the agency's suspension of the challenged document-retention policy, the investigation by SEC's OIG, and the ongoing collaboration with NARA to develop a new disposition schedule.  Mot. at 24-25.  While this may all be true, these efforts concern the document-retention policy, not any attempt to restore or recover the documents, which is the issue that underlies Counts III and IV.  As CREW notes, "[W]hatever ongoing collaboration is occurring . . . does not include steps to retrieve and restore the destroyed investigative files." Opp. at 24.

The Court finds that for the purposes of surviving this Motion to Dismiss, Plaintiff raises sufficient questions regarding the SEC's failure to undertake actions for the recovery of records to support a claim by a private litigant.  See Armstrong, 924 F.2d at 296 ("On the basis of such clear statutory language mandating that the agency head and Archivist seek redress for the unlawful removal or destruction of records, we hold that the agency head's and Archivist's enforcement actions are subject to judicial review.").  The Court will thus not foreclose at this early stage of the litigation the possibility that such private action may be appropriate.  Instead, it will allow the parties to develop the record as to the efforts undertaken by Defendants, which may inform the Court's future decision about whether Plaintiff's claims can proceed under Armstrong's limited private right of action.

    C.      Mandamus

Defendants' final challenge addresses Plaintiff's mandamus claims (Counts II and IV). They argue that Plaintiff has failed to establish a duty that Defendants owe to CREW that would provide a basis for granting such relief.  Mot. at 25-27.  Plaintiff responds that the mandamus claims should not be dismissed as CREW lacks any alternative administrative means to challenge Defendants' failure to comply with the FRA, and it has alleged the requisite duty under the FRA to obtain mandamus relief.  Opp. at 25-27.  Because this Court has already determined that Count II is moot, it evaluates Defendants' argument with respect to the only remaining mandamus claim, Count IV.

Mandamus is proper only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." Council of and for the Blind of Delaware Cnty. Valley v. Regan, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (*en banc*).  Defendants' argument here focuses on Plaintiff's failure to demonstrate the requisite duty needed under the second prong.  See Mot. at 26.  The party seeking mandamus has the "burden of showing that [its] right to issuance of the writ is 'clear and indisputable.' " Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988) (citing Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953)).  The threshold for mandamus relief, as Defendants note, is a high one.  Fornaro v. James, 416 F.3d 63, 69 (D.C. Cir. 2005) ("Mandamus is a 'drastic' remedy, 'to be invoked only in extraordinary circumstances.'") ( internal citations omitted).

This Circuit's decision in Armstrong, discussed above in Section III.B., articulates the duty that is the backdrop for Plaintiff's mandamus claim.  As set forth in Armstrong, an agency head's initiation of an enforcement action to prevent the destruction of records is not discretionary:

> Because the FRA enforcement provisions leave <u>no</u> discretion to determine
> which cases to pursue, the agency head's [] decisions are not committed to
> agency discretion by law. In contrast to a statute that merely <u>authorizes</u> an
> agency to take enforcement action as it deems necessary, the FRA <u>requires</u>
> the agency head and Archivist to take enforcement action.

<u>Armstrong</u>, 924 F.2d at 295 (emphasis in original); <u>see also</u> <u>EOP</u>, 587 F. Supp. 2d at 62-63

(recognizing <u>Armstrong</u> as source of Defendants' duties).

As Plaintiff alleges the requisite duty to support a mandamus claim, it would be

premature for the Court to rule as a matter of law that Plaintiff will not be entitled to this type of

relief.  <u>See</u> <u>Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.</u>, 219 F. Supp. 2d 20, 44

(D.D.C. 2002) ("At this stage of the case, it would be premature and inappropriate to determine

whether the relief of mandamus will or will not issue. . . .  It is sufficient to determine that

plaintiffs have stated a claim for relief under the mandamus statute. Whether or not plaintiffs will

prove that claim remains to be seen.").  Accordingly, the Court declines to dismiss Count IV

pursuant to Defendants' mandamus argument.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to

Counts I, II, and V, and deny it as to Counts III and IV.  A separate Order consistent with this

Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: <u>May 2, 2012</u>