**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>    Plaintiff,<br><br>        v.<br><br>**U.S. SECURITIES AND EXCHANGE COMMISSION,** *et al.*,<br><br>    Defendants. | Civil Action No.  11-1732 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Citizens for Responsibility and Ethics in Washington, a nonprofit organization that makes government records available to the public, has filed hundreds of Freedom of Information Act requests with federal agencies, including the SEC. In response to increased media and Congressional attention on the SEC's document-retention policies, CREW submitted several FOIA requests for documents regarding the SEC's decisions not to take further action in a number of closed preliminary investigations. Before receiving the SEC's response, CREW brought this suit against the Commission and its Chairman, Mary L. Schapiro, under the Federal Records Act.

Plaintiff's Complaint contends that Defendants failed to comply with the FRA through 1) the SEC's improper policy relating to the destruction of preliminary investigative materials and 2) its failure to undertake efforts to recover and restore records destroyed pursuant to the policy. Given the SEC's recent reversal of that policy, the Court previously granted its motion to dismiss counts related to the first issue. The parties have now brought cross-motions for summary judgment on counts raising the second issue. Because – to the extent the SEC was under any

1

restoration duty at all – the agency did not abuse its discretion regarding the manner in which it fulfilled its obligations, the Court will grant Defendants' Motion as to CREW's Administrative Procedure Act claim. Likewise, because any duty the agency was under was discretionary and because Plaintiff had an adequate remedy available through the APA, the Court will also grant summary judgment for the SEC as to CREW's mandamus claim.

## I. Procedural Background

Both the facts of this case and the relevant statutory background are set forth in detail in this Court's Opinion granting in part and denying in part the SEC's earlier motion to dismiss. See Citizens for Responsibility and Ethics in Washington v. U.S. Securities and Exchange Commission (CREW I), 858 F. Supp. 2d 51, 55-56 (D.D.C. 2012). To summarize, CREW is challenging the SEC's policy of destroying records relating to the preliminary work the agency undertakes prior to the commencement of a formal investigation. See Compl., ¶¶ 16-17. In addition, CREW independently asserts that the SEC has not sought to recover records destroyed pursuant to that policy. See id., ¶ 22. CREW thus alleges that it was denied "present and future access to important documents that would shed light on the conduct of public officials and the actions and effectiveness of the SEC's Enforcement Division" as a result of the SEC's failure to comply with the FRA. See id., ¶ 62; see also id., ¶¶ 42, 51, 56, 69. Plaintiff's suit does not seek review of an agency's denial of a particular FOIA request; instead, its claims challenge Defendants' failure to comply with their duties regarding the agency's retention of documents, as set forth in the FRA.

In September 2011, CREW filed a FOIA request with the SEC seeking

> all records explaining or describing in any way the SEC's reasons
> for not proceeding with any closed preliminary investigations,
> including but not limited to Matters Under Inquiry ("MUI"), of:
> Bernard L. Madoff; Goldman Sachs trading in AIG credit default

>swaps in 2009; financial fraud at Wells Fargo and Bank of
>America in 2007 and 2008; and insider trading at Deutsche Bank,
>Lehman Brothers, and SAC Capital.

Id., ¶ 5; Pl. Opp. to Motion to Dismiss (ECF No. 8), Exh. B (September 14, 2011, FOIA Request). Before the SEC responded, CREW brought this suit against the Commission and its Chairman, alleging violations of the FRA, 44 U.S.C. §§ 2101 *et seq.*, 3101 *et seq.*, 3301 *et seq.* The Complaint asserted five causes of action. Three of these were dismissed in the earlier Opinion, which concluded that the SEC's abandonment of its document-destruction policy rendered certain claims moot. See CREW I, 858 F. Supp. 2d at 63. Two other claims remain: Count III seeks a declaratory order under the APA, 5 U.S.C. § 706(1), compelling Defendants to initiate action to restore destroyed records, and Count IV seeks a writ of mandamus ordering the same relief. When this Court denied Defendants' motion to dismiss as to these counts, it "allow[ed] the parties to develop the record as to the efforts undertaken by Defendants, which may inform the Court's future decision." Id. at 64. Having done so, the parties then filed cross-motions for summary judgment, which the Court now considers.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.

In a case involving review of a final agency action under the APA, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing Nat'l Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)).  "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Id. (internal citations omitted).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

Where, as here, a plaintiff challenges an agency's inaction, judicial review is still more limited.  An agency's failure to act is "simply the omission of an action without formally rejecting a request – for example, the failure to promulgate a rule or take some decision by a statutory deadline.  The important point is that a 'failure to act' is properly understood to be limited . . . to [failure to take] a discrete action."  Norton v. Southern Utah Wilderness Alliance, (SUWA), 542 U.S. 55, 63 (2004) (emphasis in original).  Where the agency has failed to take such a discrete action, "'[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'"  Id. at 62 (quoting 5 U.S.C. § 706(1)) (alteration in original).  In such circumstances, a court may only "compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'"

Id. at 64 (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)) (emphasis in original).

**III.  Analysis**

The SEC argues that it is entitled to summary judgment on CREW's remaining two claims for three reasons.  First, it offers a new statutory-interpretation argument that the FRA's mandatory enforcement duty – the duty to request that the Attorney General initiate an enforcement action – pertains only to records physically removed from an agency's custody, not to those records that have been destroyed, as is the case here.  See Mot. at 10.  Because the FRA imposes no mandatory enforcement duty in the current circumstances, the SEC asserts that CREW's APA claim must fail.  See id. at 14.  Second, it contends that even assuming, *arguendo*, that the FRA does impose a mandatory enforcement duty, the SEC has satisfied its statutory obligations through its own internal efforts.  See id. at 15.  Finally, the SEC argues that CREW's mandamus claim cannot survive, both because it relies on a discretionary duty and because Plaintiff has an alternative remedy available under the APA.  See id. at 25-26.  The Court will consider each in turn.

A.  APA

The Federal Records Act, upon which CREW's remaining claims are based, is a collection of statutes governing the creation, management, and disposal of federal records.  See 44 U.S.C. §§ 2101 *et seq.*, 3101 *et seq.*, 3301 *et seq.*  Pursuant to the FRA, heads of federal agencies are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency…."  44 U.S.C. § 3101.  Each agency head shall also "establish safeguards against the removal or loss of records he determines to be necessary and required by

regulations of the Archivist [the head of the National Archives and Records Administration]." Id. § 3105.

A series of provisions within the FRA sets forth a structure whereby the Archivist and agency heads are to work together to ensure that documents are not unlawfully destroyed. Each agency head, for example,

> shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency of which he is the head that shall come to his attention, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records he knows or has reason to believe have been unlawfully removed from his agency, or from another Federal agency whose records have been transferred to his legal custody.

Id. § 3106. If the agency head does not initiate such an action, the Archivist "shall request the Attorney General to initiate such action, and shall notify the Congress when such a request has been made." Id. In its suit, CREW asks this Court to require the SEC to initiate action through the Attorney General to recover records. See Compl., ¶¶ 57, 63.

1. *Statutory Interpretation*

The SEC first raises a statutory-interpretation argument – absent from its prior motion – that § 3106 in fact imposes no duty on agencies to take action to restore records that have been destroyed. See Mot. at 10. Specifically, the SEC argues that

> the text of § 3106 sets forth two separate duties on agency heads: (1) in the event of any unlawful removal, defacing, alteration or destruction of records, an agency head must notify the Archivist; and (2) in the event of any unlawful removal, the agency head must request that the Attorney General initiate an action for the recovery of the records.

Id. In its view, "[t]he only time an agency head has a mandatory enforcement duty . . . is when records have been unlawfully removed – but not when they have been unlawfully destroyed." Id. The agency marshals several canons of statutory interpretation to support

6

its position, while CREW argues that the SEC's position is inconsistent with legislative history and some of the language of Armstrong v. Bush, 924 F.2d 282 (D.C. Cir. 1991) (Armstrong I), and Armstrong v. Exec. Office of the President, 1 F.3d 1274 (D.C. Cir. 1993) (Armstrong II). See Opp. at 15-19. While this is a close question, the Court agrees with the SEC's reasoning.[1]

The SEC first contends that its interpretation is consistent with the plain text of § 3106, invoking the rule against surplusage and the canon of "*expressio unius est exclusio alterius*, that is, the mention of one thing implies the exclusion of another." Halverson v. Slater, 129 F.3d 180, 185 (D.C. Cir. 1997) (internal citations and quotation marks omitted). Under the SEC's interpretation of § 3106, there are four possible triggers for the notification duty: "removal, defacing, alteration or destruction," and only one for the enforcement duty, "removal." See Mot. at 10. If "removal" includes "defacing, alteration[, and] destruction," why list those other terms? CREW's reading thus violates the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant," otherwise known as the rule against surplusage. TRW v. Andrews, 534 U.S. 19, 31 (2001) (internal quotation marks omitted). Likewise, the SEC maintains that because destruction is mentioned in the first clause, but not the second, this Court must assume that Congress' choice to exclude it was intentional. See Russello v. United States, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

---

[1] Although the Court's prior opinion indicated that "for the purposes of surviving [Defendants'] Motion to Dismiss, Plaintiff raises sufficient questions regarding the SEC's failure to undertake actions for the recovery of records to support a claim by a private litigant," CREW I, 858 F. Supp. 2d at 64, Defendants' statutory-interpretation argument was not before the Court at that time.

7

intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and alterations omitted). The Court finds this reasoning persuasive.

In response, CREW argues that the legislative history of the FRA suggests that the enforcement duty also applies to the destruction of records. See Opp. at 17. CREW's arguments in this regard run up against a fundamental problem, however: legislative history cannot trump a statute's plain meaning. "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6 (2000) (internal citation and quotation marks omitted). Indeed, "[w]hen the words of a statute are unambiguous . . . this first canon is also the last: 'judicial inquiry is complete.'" Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)). By its plain terms, the second clause of § 3106 refers only to "removed" documents; the simplest and clearest reading available – and, indeed, the only reading available to this Court – is that the mandatory enforcement duty is only triggered by the removal of documents. See Va. Dep't of Medical Assistance Servs. v. Dept. of Health & Human Services, 678 F.3d 918, 926 (D.C. Cir. 2012) (court may not "'correct' the text so that it better serves the statute's purposes, nor . . . 'avoid the Congressional intent clearly expressed in the text simply by asserting that [its] preferred approach would be better policy'") (internal citation omitted).

CREW further argues that the SEC's interpretation of § 3106 runs afoul of the Armstrong I and II decisions. See Opp. at 15-16. While these cases certainly contain language helpful to CREW, neither case addressed the statutory-interpretation question presented here nor is the language in these opinions sufficient to overcome the plain meaning of § 3106. For example, Armstrong I states that "if the agency head . . . does nothing while an agency official destroys or

8

removes records . . .[,] private litigants may bring suit to require the agency head . . . to ask the Attorney General to initiate legal action." 924 F.2d at 295. Similarly, Armstrong II describes § 3106 in a paranthetical as "requiring agency heads to notify the Archivist of any unlawful destruction or removal of records and placing upon them an independent duty to seek legal action through the Attorney General to recover the records." 1 F.3d at 1279. While these two cases analyze whether an agency's duties under the FRA may be enforced by a private litigant through the APA, neither addressed the specific statutory question at issue here. In addition, both were forward looking, seeking to prevent the future destruction of records. By contrast, it appears that no court has yet spoken to the issue of whether § 3106 imposes a restoration duty regarding already-destroyed documents.

The SEC also raises a logistical argument, suggesting that reading the statute to require agencies to seek the assistance of the Attorney General in recovering records that have been destroyed may raise some peculiar practical and constitutional difficulties. See SEC's Rep. at 8. Requiring the Attorney General to bring suit against another federal agency – which is typically represented by the Department of Justice – would be highly unusual, and it is difficult for this Court to overlook the "constitutional oddity of a case pitting two agencies in the Executive Branch against one another." See SEC v. Fed. Labor Relations Auth., 568 F.3d 990, 996 (D.C. Cir. 2009) (Kavanaugh, J., concurring). And indeed, such a lawsuit would likely be moot in any case: while modern technology may allow some "destroyed" records to be recovered, others are likely to be permanently unrecoverable. Neither would be true in the removal context because documents that have been physically removed are still physically recoverable, and because the legal redress the Attorney General would seek would take the form of a civil replevin action against the holder of the records, rather than a suit against the agency head. While the SEC's

arguments in this regard are instructive and certainly add weight to its initial position, they are not dispositive: the plain meaning of the statute is. Because the plain meaning of the statute is clear that the mandatory enforcement duty in the second clause of § 3106 refers only to removed records, the SEC was under no duty to undertake restoration efforts as to the MUI records that were destroyed in this case.

2. *Enforcement Duties Under § 3106*

Even assuming that § 3106 can be read to impose a mandatory enforcement duty regarding destroyed records – and not just removed ones – the SEC is still entitled to summary judgment because it has sufficiently fulfilled those obligations. CREW alleges that the SEC has "fail[ed] to take any action to recover the destroyed investigative files or prevent the further destruction of investigative records [,] . . . violat[ing its] duties under 44 U.S.C. § 3106 to request that the attorney general initiate action or seek other legal redress to recover the destroyed records." See Compl., ¶ 56. While courts are empowered to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), a court may only do so when the action is withheld unlawfully – that is, when the agency has failed to act in response to a clear legal duty. See SUWA, 542 U.S. at 63-64. If the duty requires a "ministerial or non-discretionary act," a court may order the agency to take that specific action, but if the duty is simply to "take action upon a matter" but "the manner of its action is left to the agency's discretion," the court "has no power to specify what the action must be." SUWA, 542 U.S. at 64-65 (internal citations and quotation marks omitted); see also Cobell v. Norton, 392 F.3d 461, 476 (D.C. Cir. 2006) (vacating district court's order where it "seem[ed] a specification not of [the agency's] duties but of the court's preferred methodology for assuring [the agency's] fulfillment of those duties"); Am. Ass'n of Retired Pers. v. EEOC, 823 F.2d 600, 605 (D.C. Cir. 1987) ("Section 706(1) does

not provide a court with a license to substitute its discretion for that of an agency merely because the agency is charged with having unreasonably withheld action."). Where the statute at issue imposes only a duty to "take action upon a matter," and the agency appears to have taken some action, it is reviewed as an action taken according to the agency's discretion – that is, it is subject to review under the APA's traditional "arbitrary and capricious" standard. See Enterprise Nat. Bank v. Vilsack, 568 F.3d 229, 234-35 (D.C. Cir. 2009).

To the extent § 3106 and Armstrong I impose a duty on the agency to restore destroyed records, such a duty is clearly in SUWA's second category – namely, the manner is left to the agency's discretion. Armstrong I's language makes clear that the agency has choices regarding "the manner of its action." SUWA, 542 U.S. at 64 (internal citations and quotation marks omitted). The Armstrong I court held that in certain circumstances, it is "not . . . inconsistent with . . . the FRA to permit judicial review of the agency head's refusal to seek the initiation of an enforcement action by the Attorney General." Armstrong I, 924 F.2d at 295. The court, however, further cautioned that it "[did] not mean to imply . . . that the Archivist and agency head must initially attempt to prevent the unlawful action by seeking the initiation of legal action. Instead, the FRA contemplates that the agency head and Archivist may proceed first by . . . taking such intra-agency actions as disciplining the staff involved in the unlawful action, increasing oversight by higher agency officials, or threatening legal action." Id. at 296 n.12. Indeed, CREW even acknowledges this, noting that "the [FRA's] administrative enforcement scheme . . . encompasses far more than the initiation of a legal action." See Opp. at 19 (citing Armstrong I, 924 F.2d at 296 n.12).

While Armstrong I suggests that judicial review of agency inaction under the FRA may be permissible in certain circumstances, that case's gloss on § 3106 appears to give the agency

broad discretion regarding what internal remedial steps it may take in response to a loss of records. See Armstrong I, 924 F.2d at 296 n.12   When reading Armstrong I together with SUWA and its progeny, this Court believes its review of the intra-agency corrective actions taken by the SEC in this case is extremely limited: the Court may not "substitute its discretion for that of [the agency]." Am. Ass'n of Retired Pers., 823 F.2d at 605.  Instead, the Court may only review the SEC's efforts under the APA's "arbitrary and capricious" standard, deferring to the agency's expertise and looking only for "a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal citations and quotation marks omitted).

　　　The D.C. Circuit's analysis in Enterprise Nat. Bank, on analogous facts, provides the relevant framework for the Court's limited inquiry here.  In that case, when the agency compensated the plaintiff for only a portion of the loss to which it believed it was entitled, the plaintiff "[sought] relief 'compelling agency action unlawfully withheld' under 5 U.S.C. § 706(1), . . . arguing that the [relevant agreement] required full payment of its loss claim, not the partial payment [the agency] offered." Enterprise Nat. Bank, 568 F.3d at 234.  The court, finding that the agency had discretion about the manner of its action, had "no power to specify what th[at] action must be." Id. (internal citations and quotation marks omitted) (alterations in original).  The court then held that the agency's implementation of its duties under the relevant agreement was "neither arbitrary nor capricious" under a somewhat abbreviated application of that standard. Id. at 235.  Applying such a deferential standard, the Court here is unable to find that the SEC's interpretation of its obligations under Armstrong I and § 3106 in carrying out its internal remedial efforts was arbitrary and capricious.

Indeed, the administrative record filed in this case reveals efforts by the SEC that, while clearly not as extensive as CREW would have liked, were not so woefully insufficient as to render the SEC's claims to have fulfilled its duties "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." State Farm, 463 U.S. at 43. Rather, the record suggests an agency aware of the potential enormity of the task at hand, but attempting to clarify the scope of the problem, making some efforts to retrieve documents that might still exist, identifying additional sources of information regarding the relevant documents, and counseling employees regarding future document preservation. While the Armstrong I decision is perhaps regrettably brief regarding the agency's obligations, suggesting only that it "may proceed first by . . . taking such intra-agency actions as disciplining the staff involved in the unlawful action, increasing oversight by higher agency officials, or threatening legal action," Armstrong I, 924 F.2d at 296 n.12, the SEC's actions here appear to be well within the broad discretion that Armstrong I provides. In fact, the Court surmises it is far more beneficial to CREW's interest for the SEC to seek to recover records than to engage in, *e.g.*, the disciplining of staff.

As to the SEC's actions here, Robert Khuzami, Chief of the Enforcement Division, indicated that an "all-hands meeting" had taken place to discuss the destroyed documents, at which senior Division staff identified existing information the Division still had regarding the relevant documents; discussed with reasonable particularity which of the missing documents, if any, might have constituted "records" under the FRA; and what documents, though no longer in the SEC's possession, might still be publicly available regarding these matters. See AR at 14-20. E-mails between senior Division staff further describe attempts to recover information about at least six high-profile matters on an "urgent" and "time sensitive" basis, a search that

13

encompassed databases and services in the District of Columbia, Los Angeles, and New York, and both existing and legacy document-management systems within the agency. See AR at 21-32. The search appears to have continued for some time. See AR at 70, 150-51. Likewise, senior staff appear to have conducted estimates of the cost of continuing to conduct detailed searches of the agency's available e-mail archives to look for documents that might still be recovered, see AR at 53, though this effort appears to have stalled several months later because of resource constraints. See AR at 152. Finally, senior SEC staff reported that the SEC's Office of the Inspector General had found that Enforcement Division "management ha[d] taken appropriate action . . . referr[ing] . . . employees for oral instruction or counseling" regarding their FRA duties, see AR at 183, and OIG then closed its investigation, finding that the SEC had complied with all of its recommendations. See AR at 202-03.

  While CREW is correct in noting that many of the documents in the administrative record refer to only a handful of specific, high-profile matters, see AR at 23-32, and that the SEC appears to have considered the likelihood of further Congressional inquiry in making decisions about what resources to expend searching for recoverable records, id., these considerations run afoul of no specific statutory mandate and are not impermissible exercises of agency discretion. Upon the showing the SEC has made, whether Plaintiff or this Court believes the SEC should have engaged in further recovery efforts is simply beside the point. The SEC took a series of internal steps that appear well within the kinds of enforcement actions that § 3106 and Armstrong I contemplate, and the record does not demonstrate that the SEC's conclusion that it had satisfied its obligations constituted a "clear error of judgment." State Farm, 463 U.S. at 43. Plaintiff "cannot seek wholesale improvement of [the agency's restoration efforts] by court decree, rather than in the offices of the [agency] or the halls of Congress, where programmatic

improvements are normally made." Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 891 (1990) (emphasis deleted). To the extent that § 3106 imposes an affirmative duty to take action regarding destroyed records, the SEC has not abused its discretion in taking a series of internal remedial steps and has thereby fulfilled any duty so imposed. Because the SEC has fulfilled its obligations, it is entitled to summary judgment on the APA count.

B. Mandamus

In Count IV of the Complaint, CREW seeks a writ of mandamus compelling the SEC to "request that the attorney general initiate action or seek other legal redress to recover the destroyed investigative records." See Compl., ¶ 63. The SEC argues that this claim must be dismissed because it is duplicative of CREW's APA claim. See Mot. at 26-27. The SEC further asserts that Plaintiff's mandamus claim "suffers from the same merits-based defects" as its APA claim. Id. at 25.

Mandamus is proper only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." Council of and for the Blind of Delaware Cnty. Valley v. Regan, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (*en banc*). The threshold for mandamus relief is a high one: as the D.C. Circuit has held, "mandamus is a drastic remedy, to be invoked only in extraordinary circumstances." Fornaro v. James, 416 F.3d 63, 69 (D.C. Cir. 2005) (citations and internal quotation marks omitted). The decision of whether to issue a writ of mandamus is committed to the discretion of the district court. See In re Cheney, 406 F.3d 723, 729 (D.C. Cir. 2005) (*en banc*). Because Plaintiff cannot show that Defendants were under a clear duty to act, and because CREW has an adequate remedy available under the APA, Defendants are entitled to summary judgment on this count, too.

To be enforceable through mandamus, the agency's duty must be "so plainly prescribed as to be free from doubt and equivalent to a positive command." Wilbur v. United States, 281 U.S. 206, 218 (1929). "[W]here the duty is not thus plainly prescribed, but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." Id. at 219. "Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself. The writ can never be used as a substitute for a writ of error." Id. at 220. As discussed in section III.A.2, *supra*, any duty the SEC was under to take action to recover the destroyed documents was a discretionary one – the statute merely requires the agency to act, but does not prescribe the manner of the agency's action. The standards for APA relief under § 706(1) and for mandamus here are identical, SUWA, 542 U.S. at 63, and to the extent that it is unable to compel specific action under the APA, this Court is similarly unable to issue mandamus in such a circumstance.

In addition, Plaintiff's mandamus claim cannot prevail because CREW does have another available remedy in the APA. Indeed, Plaintiff's own Complaint makes this clear: CREW requests identical relief in both claims. Compare Compl., ¶ 57 (seeking an injunction compelling the SEC "to request that the attorney general initiate action or seek other legal redress to recover the improperly destroyed records") with Compl., ¶ 63 (seeking a writ of mandamus compelling the SEC "to request that the attorney general initiate action or seek other legal redress to recover the destroyed investigative records"). Mandamus is only available where "the party seeking issuance of the writ ha[s] no other adequate means to attain the relief he desires." Kerr v. U.S. Dist. Court for the N. Dist. of Cal., 426 U.S. 394, 403 (1976) (citation omitted). The fact that

Plaintiff's APA claim has failed in these circumstances does not prevent the APA from being an "adequate means to attain relief" for mandamus purposes.  See id.; see also Wilbur, 281 U.S at 220 ("[T]he fact that no writ of error will lie . . . by which to review the judgment of the [agency head] [does not] furnish any foundation for the claim that mandamus may therefore be awarded.").  Because the APA provides an adequate means of relief, and because the duty at issue in this case is discretionary and not enforceable by mandamus, Defendants are entitled to summary judgment on Plaintiff's mandamus claim.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment as to CREW's remaining claims and deny Plaintiff's.  A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  January 17, 2013